JOHN D. FREED (CA State Bar No. 261518)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: jakefreed@dwt.com

STEVEN E. KLEIN (OR State Bar No. 051165)
*Pro hac vice*
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone: (503) 241-2300
Facsimile: (503) 778-5299
Email: stevenklein@dwt.com

ADAM S. SIEFF (CA Bar No. 302030)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: adamsieff@dwt.com

Attorneys for Plaintiff
BOILING CRAB FRANCHISE CO., LLC

## IN THE UNITED STATES DISTRICT COURT

## THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOILING CRAB FRANCHISE CO., LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CAJUN BOILING CRAB INC., CAJUN BOILING CRAB CO., and ANTWAN ALLAM ALEXANDER CHENEVERT (A/K/A ALEXANDER CHENEVERT),<br><br>        Defendants. | Case No. 8:21-cv-00402-JVS-DFM<br><br>**PLAINTIFF BOILING CRAB FRANCHISE CO., LLC'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS CAJUN BOILING CRAB INC., CAJUN BOILING CRAB CO., AND ANTWAN ALLAM ALEXANDER CHENEVERT**<br><br>Date: July 12, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. James Selna |

DAVIS WRIGHT TREMAINE LLP

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE THAT** on July 12, 2021 at 1:30 p.m., or as soon

3    thereafter as the matter may be heard, in Courtroom 10C of the Honorable Judge

4    James Selna located at 411 West 4th Street, Room 1053 Santa Ana, California,

5    plaintiff Boiling Crab Franchise, Co., LLC ("The Boiling Crab" or "Plaintiff") will

6    and hereby do move this Court pursuant to Federal Rule of Civil Procedure 55 for

7    Default Judgment against defendants Antwan Allam Alexander Chenevert, Cajun

8    Boiling Crab Co. and Cajun Boiling Crab Inc. (collectively, "Defendants")

9        The Boiling Crab is entitled to entry of default judgment against Defendants

10   as all Defendants were properly served with the Complaint in this action, failed to

11   timely respond, and the Clerk entered default against Defendants.  Accordingly,

12   The Boiling Crab seeks judgment in its favor and against Defendants for damages

13   in the amount of $291,650 on The Boiling Crab's trademark claims, $9,433 for

14   attorneys' fees, and post-judgment interest.  In addition, The Boiling Crab seeks an

15   Order permanently enjoining and restraining Defendants, their agents, servants,

16   employees, and all persons acting in concert with them, from infringing or

17   fostering others to infringe The Boiling Crab's registered trademarks, as more fully

18   set forth in The Boiling Crab's concurrently filed Proposed Order Granting

19   Plaintiff's Motion for Default Judgment and Permanent Injunction.

20       This Motion is based upon this Notice, the Memorandum of Points and

21   Authorities, the Declaration of Steven E. Klein, and any additional evidence and

22   arguments as may be presented at or before any hearing on this matter.

23

24   DATED June 24, 2021                        Respectfully submitted,

25                                              By: */s/ John D. Freed*

26                                                  John D. Freed

27                                              DAVIS WRIGHT TREMAINE LLP

28                                              505 Montgomery Street, Suite 800
                                                San Francisco, California  94111

*DAVIS WRIGHT TREMAINE LLP*

2

Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Email:        jakefreed@dwt.com

Steven E. Klein (*Pro Hac Vice*)
Email: stevenklein@dwt.com
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:    (503) 241-2300
Facsimile:    (503) 778-5299

Attorneys for Plaintiff
*Boiling Crab Franchise Co., LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

1

2

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND ...............................................................2

    A.   The Boiling Crab's Marks Are Valid, Protected, and Well-Known .........................................................................................2

    B.   Cajun Boiling Crab's Infringement of the Marks ................................4

    C.   Defendants Have Failed to Answer or Otherwise Appear....................4

III. ARGUMENT .........................................................................................5

    A.   This Court Has Jurisdiction to Enter Default Judgment ......................5

    B.   The Boiling Crab Satisfied All Procedural Requirements for Obtaining a Default Judgment Against Defendants ............................6

    C.   The Boiling Crab Is Entitled to Default Judgment Against Defendants Under the *Eitel* Factors ....................................................7

        1.   First *Eitel* Factor:  The Boiling Crab Will Be Prejudiced Without Entry of Default Judgment ...........................................8

        2.   Second and Third *Eitel* Factors: The Boiling Crab's Claims Are Meritorious and The Complaint Is Well-Pled.........8

            (a)   Infringement of Federally Registered Trademarks (15 U.S.C. § 1114(1)).......................................................9

            (b)   Federal Unfair Competition (15 U.S.C. § 1125(a)) and State Unfair Competition (Cal. Bus. & Prof. Code § 17200) ...............................................................13

        3.   Fourth *Eitel* Factor:  Damages Are Appropriate Given the Seriousness and Scope of Defendants' Conduct ......................14

        4.   Fifth *Eitel* Factor:  There Is No Possibility of Disputed Material Facts ........................................................................14

        5.   Sixth *Eitel* Factor:  There Is No Possibility of Excusable Neglect .................................................................................15

DAVIS WRIGHT TREMAINE LLP

i

6.    Seventh *Eitel* Factor:  The Policy Favoring Decisions on the Merits is Not Dispositive Where Defendants Knowingly Abandoned Their Defense ....................................15

D.    The Boiling Crab Is Entitled to Relief ..................................16

1.    Permanent Injunction...................................................16

2.    Damages and Disgorgement of Profits....................................17

3.    Attorneys' Fees .........................................................21

4.    Post-Judgment Interest.................................................22

IV.    CONCLUSION ..........................................................23

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3

*Acad. of Motion Picture Arts & Scis. v.*
4
    *Creative House Promotions, Inc.*,
    944 F.2d 1446 (9th Cir. 1991) ........................................................... 14
5

6
*Active Sports Lifestyle USA LLC v. Old Navy, LLC*,
    No. SACV 12-00572 JVS, 2013 WL 11239385
7
    (C.D. Cal. Nov. 21, 2013) ................................................................. 18

8
*Adidas Am., Inc. v. Skechers USA, Inc.*,
9
    No. 3:15-cv-01741-HZ, 2017 WL 3319190 (D. Or. Aug. 3, 2017) ................. 19

10
*ADT v. Alarm Prot. LLC*,
11
    No. 9:15-CV-80073, 2017 WL 2212541 (S.D. Fla. May 17, 2017) ................. 20

12
*Adultcon Inc. v. Sol Entm't Inc.*,
    No. SACV 14-0291 AG (JPRx), 2014 WL 12622419
13
    (C.D. Cal. Dec. 22, 2014) ................................................................. 18

14
*Applied Info. Scis. Corp. v. eBAY, Inc.*,
15
    511 F.3d 966 (9th Cir. 2007) ............................................................... 9

16
*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
17
    457 F.3d 1062 (9th Cir. 2006) ............................................................ 10

18
*Bd. of Trs. of Pac. Coast Roofers Pension Plan v. Fryer Roofing Co.*,
19
    No. 16-CV-02798-LHK, 2017 WL 6539868
    (N.D. Cal. Dec. 21, 2017) ................................................................... 8
20

21
*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) ............................................................ 16
22

23
*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ............................................................. 13

24
*Craigslist, Inc. v. Kerbel*,
25
    No. C-11-3309 EMC, 2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ................. 18

26
*Craigslist, Inc. v. Naturemarket, Inc.*,
27
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................... 8, 16

28

DAVIS WRIGHT TREMAINE LLP

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

*Davis v. Fendler*,
   650 F.2d 1154 (9th Cir.1981)..................................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ..............................................................................16

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986)..........................................................*passim*

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) .........................................................5, 15

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1962) ................................................................12

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom.*
   *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*,
   446 F.2d 295 (2d Cir. 1971) ................................................................18

*Gucci Am., Inc. v. Guess?, Inc.*,
   858 F. Supp. 2d 250 (S.D.N.Y. 2012) ..................................................19

*HICA Educ. Loan Corp. v. Warne*,
   No. 11-CV-04287-LHK, 2012 WL 1156402
   (N.D. Cal. Apr. 6, 2012)......................................................................16

*Howard Johnson Co. v. Khimani*,
   892 F.2d 1512 (11th Cir. 1990)............................................................20

*In re Tuli*,
   172 F.3d 707 (9th Cir. 1999).................................................................5

*Int'l Order of Job's Daughters v. Lindeburg & Co.*,
   633 F.2d 912 (9th Cir. 1980)................................................................13

*IO Grp., Inc. v. Antelope Media, LLC*,
   No. C-08-4050 MMC, 2010 WL 2198707
   (N.D. Cal. May 28, 2010)....................................................................17

*Kinsley Tech. Co. v. YA YA Creations, Inc.*,
   No. 2:20-CV-04310-ODW (KSx), 2021 WL 2227394
   (C.D. Cal. May 3, 2021)......................................................................16

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

*MAI Sys. Corp. v. Peak Comput., Inc.*,
   991 F.2d 511 (9th Cir. 1993) ...................................................................16, 17

*Mantra Band, LLC v. Ozpar Pty Ltd*,
   No. SACV 19-00197JVS (ADSx), 2020 WL 5163567
   (C.D. Cal. June 4, 2020) ...............................................................................21

*Mead Johnson & Co. v. Baby's Formula Serv., Inc.*,
   402 F.2d 19 (5th Cir. 1968) ..........................................................................13

*Meadows v. Dom. Rep.*,
   817 F.2d 517 (9th Cir. 1987) .........................................................................15

*O'Reilly v. Valley Entm't, Inc.*,
   No. C-09-03580-CW (DMR), 2011 WL 13258234 (Jan. 4, 2011),
   *R. & R. adopted*, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011) .......................6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ......................................................................................22

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ...........................................................................12

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ......................................... 2, 5, 8, 14

*Philip Morris USA Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) .............................................................7, 8, 15

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   No. SA 12-CV-0451, 2013 WL 1953719 (C.D. Cal. May 9, 2013) .................19

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ...........................................................................6

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
   96 F.3d 1217, *as modified*, 97 F.3d 1460 (9th Cir. 1996) ...................................9

*Shanghai Automation Instrument Co. v. Kuei*,
   194 F. Supp. 2d 995 (N.D. Cal. 2001) ...........................................................15

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   839 F.3d 1179 (9th Cir. 2016) .......................................................................22

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ...........................................................................9

DAVIS WRIGHT TREMAINE LLP

v

DAVIS WRIGHT TREMAINE LLP

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
    932 F.2d 1113 (5th Cir. 1991) ................................................................. 18

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ................................................................. 13

*United Artists Corp. v. United Artist Studios LLC*,
    No. CV 19-828 MWF-MAA, 2020 WL 4369778
    (C.D. Cal. July 7, 2020) ........................................................................... 12

*Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*,
    No. 4:19-CV-01424-YGR, 2021 WL 254448
    (N.D. Cal. Jan. 26, 2021) ......................................................................... 17

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012) .................................................... 18

*Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*,
    655 F.2d 984 (9th Cir. 1981) ................................................................... 13

**Statutes**

Lanham Act,
    15 U.S.C. § 1051, *et seq.* ................................................................*passim*

15 U.S.C.
    § 1065 ........................................................................................................ 9
    § 1114 .................................................................................................... 9, 13
    § 1116 .................................................................................................. 16, 17
    § 1117 ................................................................................................. 17-18, 21
    § 1125 ............................................................................................. 13, 18, 21
    § 1127 ...................................................................................................... 13
    § 1221 ........................................................................................................ 5

28 U.S.C.
    § 1331 ........................................................................................................ 5
    § 1338 ........................................................................................................ 5
    § 1367 ........................................................................................................ 5
    § 1961 ...................................................................................................... 22

Cal. Bus. & Prof. Code
    § 14330 .................................................................................................... 16
    § 14340 .................................................................................................... 16
    § 17200 ....................................................................................... 13, 14, 16

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:21-cv-00402-JVS-DFM

Servicemembers Civil Relief Act,
     50 U.S.C. app. § 521 (transferred to 50 U.S.C. § 3931) .....................................7

Trademark Modernization Act of 2020, Pub. L. No. 116-260 (codified
     as part of the Consolidated Appropriations Act, 2021) ................................... 16

**Rules**

Fed. R. Civ. P.
     12 ......................................................................................................................4
     55 .......................................................................................... 1, 5, 6, 7

C.D. Cal. R.
     54 ...................................................................................................................... 22
     55 ........................................................................................................................ 1
     55-1 .................................................................................................................... 6
     55-2 .................................................................................................................. 18
     55-3 .................................................................................................................. 22

DAVIS WRIGHT TREMAINE LLP

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:21-cv-00402-JVS-DFM

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Boiling Crab Franchise Co., LLC ("The Boiling Crab") filed this lawsuit to protect its intellectual property, and to seek redress from the harm caused by defendants Antwan Allam Alexander Chenevert ("Chenevert"), Cajun Boiling Crab Co. and Cajun Boiling Crab Inc. (collectively, "Cajun Boiling Crab" or "Defendants")'s unlawful trademark infringement and unfair competition.

Since 2004, The Boiling Crab has operated its Louisiana-style seafood restaurants under its trademark, THE BOILING CRAB ("The Boiling Crab Restaurants").  The Boiling Crab Restaurants offer a unique selection of seafood-by-the-pound, seasoned with a distinctive blend of Cajun spices.  Customers enjoy one-of-a-kind dining experiences replete with unique food presentations, menu selections, and décor.  Because of The Boiling Crab's extensive use and promotion of THE BOILING CRAB marks (the "Marks"), customers readily associate the Marks with its recognized restaurant chain.

Chenevert incorporated Cajun Boiling Crab Co. and Cajun Boiling Crab Inc. to open knock-off seafood restaurants in Michigan and California ("The Cajun Boiling Crab Restaurants").  In a blatant attempt to confuse consumers, Cajun Boiling Crab imitated the Marks by adopting use of the CAJUN BOILING CRAB marks (the "Infringing Marks"), which are confusingly similar in sound and appearance.  Cajun Boiling Crab also mimicked the look-and-feel of The Boiling Crab's signage, menus, advertising, and even went so far as to copy its well-known marketing phrase—"EAT WITH YOUR HANDS."

Because the Clerk entered defaults for Cajun Boiling Crab, Inc., Cajun Boiling Co., and Chenevert, The Boiling Crab now moves for default judgment against Defendants pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2) and Local Civil Rule 55(b).  The Boiling Crab also seeks a permanent injunction to prevent continuing irreparable damage to its reputation, as well as damages,

DAVIS WRIGHT TREMAINE LLP

attorneys' fees, and post-judgment interest.

## II. FACTUAL BACKGROUND[1]

**A.    The Boiling Crab's Marks Are Valid, Protected, and Well-Known**

In 2004, The Boiling Crab opened its first restaurant in California under the trademark THE BOILING CRAB in California.  Compl. ¶ 8.  The Boiling Crab has since expanded its chain of restaurants to include locations throughout the United States, including fifteen restaurants in California, as well as locations in Texas; Nevada; Hawaii; Florida, and Washington, D.C.  *Id.*  The Boiling Crab's Restaurants offer a unique selection of Louisiana-style seafood, seasoned with a distinctive blend of Cajun spices and seasonings.  *Id.* ¶ 10.  Customers also enjoy a unique dining experience characterized by innovative food presentation, distinct restaurant décor, and unique menus.  *Id.* ¶¶ 10-11.  The Boiling Crab's Restaurants have become well-known and respected among consumers, who have come to associate THE BOILING CRAB trademarks with The Boiling Crab's one-of-a-kind dining experience.  *Id.* ¶ 12.

The Boiling Crab has invested significant time, effort, and money promoting and advertising The Boiling Crab Restaurants.  *Id.* ¶ 13.  The Boiling Crab is the owner of the following United States Trademark Registrations for its THE BOILING CRAB marks (collectively, the "Marks").  *See, e.g.*, *id*. ¶ 18 & Ex. E.

| Mark | Reg. No. | Goods & Services |
|---|---|---|
| THE BOILING CRAB | 3256219 | Restaurant Services |
|  | 4174077 | Restaurant Services |

---

[1] This factual recitation relies on the facts alleged in The Boiling Crab's Complaint (Dkt. No. 1), which are "taken as true" for purposes of this application given the entry of default against Defendants.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

| | | |
|---|---|---|
| **THE BOILING CRAB** | 4491054 | Restaurant Services |
| *The Boiling Crab* (logo) | 5374534 | Restaurant Services |

The Boiling Crab's Marks have achieved widespread recognition on the internet and social media. The Boiling Crab is the registrant of various domain names incorporating THE BOILING CRAB trademark, including <theboilingcrab.com> and <boilingcrab.com>. Compl. ¶ 14. The Boiling Crab operates websites at each of these domains, which extensively uses the Marks and embody the distinct look-and-feel of The Boiling Crab's dining experience. *See, e.g.*, *id.*, Ex. D. Additionally, The Boiling Crab uses its Marks on popular social media networking sites, like Facebook (www.facebook.com/theboilingcrab), Twitter (twitter.com/theboilingcrab), Instagram (www.instagram.com/boilingcrab), and YouTube (www.youtube.com/user/OfficialBoilingCrab). *Id.* ¶ 15.

The Boiling Crab has also made extensive use of the catchphrase "EAT WITH YOUR HANDS" and/or #EATWITHYOURHANDS hashtag in connection with its restaurant services on menus, signage, and social media. *Id.* ¶¶ 11, 16 & Ex. B.





3

DAVIS WRIGHT TREMAINE LLP

**B.    Cajun Boiling Crab's Infringement of the Marks**

On or about August 2020, Defendants opened the first knock-off Cajun Boiling Crab location in Detroit, Michigan.  Compl. ¶ 22.  Soon thereafter, in November 2020, Defendants opened a second location in Los Angeles, California.  *Id.*  The Cajun Boiling Crab has used the CAJUN BOILING CRAB mark together with red crab designs, as illustrated below, on its storefront, menus, and the like.  *See, e.g.*, *id.* ¶¶ 21-24.  Defendants also created "Cajun Boiling Crab" pages on social media platforms, like Twitter, Facebook, and Instagram, to promote the Cajun Boiling Crab Restaurants.  *See, e.g.*, *id.* ¶ 24 & Ex. G.





Cajun Boiling Crab also adopted use of the phrase #EATWITHYOURHANDS, commonly used by The Boiling Crab over the years.  *See id.* ¶ 25 & Ex. H.

**C.    Defendants Have Failed to Answer or Otherwise Appear**

The Boiling Crab filed its Complaint on March 4, 2021.  Dkt. No. 1.  On March 12 and 25, 2021, The Boiling Crab served Cajun Boiling Crab Co., Cajun Boiling Crab Inc., and Chenevert, respectively, with the Summons, Compliant, and requisite pleading documents.  *See* Dkt. Nos. 19, 21 & 23.  Under Rule 12(a)(1)(A)(i), Defendants were required to serve a responsive pleading by April 2 and 5, 2021.  Defendants failed to answer or otherwise appear in the lawsuit.  On April 22, The Boiling Crab requested that the Clerk enter default against Defendants.  Dkt. No. 24.  On April 23, Clerk entered a default against Defendants.  *See* Dkt. Nos. 27-29.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

### III.    ARGUMENT

Pursuant to Rule 55(b), a Court may grant default judgment after the Clerk enters default under Rule 55(a).  *See PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).  After the Clerk enters a default, the defendant's liability is established, and the well-pleaded factual allegations of the complaint are accepted as true.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

In considering whether to enter a default judgment, a Court assesses the seven factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In this case, the Clerk has entered default against each of the Defendants— Chenevert, Cajun Boiling Crab Co. and Cajun Boiling Crab Inc. (*see* Dkt. Nos. 27-29), and the *Eitel* factors weigh heavily in favor of entering a default judgment against Defendants.

### A.    This Court Has Jurisdiction to Enter Default Judgment

Prior to entering a default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

*First*, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) (jurisdiction over trademark), 28 U.S.C. § 1338(b) (unfair competition claim joined with a substantial and related claim under the trademark laws), and 15 U.S.C. § 1221(a) as this action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.*  Compl. ¶ 6. This Court also has supplemental jurisdiction over the claims arising out of state law pursuant to 28 U.S.C. §§ 1338(b) and 1367, because the state law claims arise out of the same operative facts as the federal claims.  *Id.*

*Second,* this Court has personal jurisdiction over the Defendants because Defendants reside and/or conduct business in this district and jurisdiction.  *Id.* ¶¶ 2-4.  Chenevert resides in California with a business address in Los Angeles,

DAVIS WRIGHT TREMAINE LLP

California. *Id.* ¶ 4. Cajun Boiling Crab Inc. is a California corporation with its principal place of business in Los Angeles, California. *Id.* ¶ 2. While Cajun Boiling Crab Co. is a Michigan corporation with its principal place of business in Detroit, Michigan. *Id.* ¶ 3. Chenevert is the principal officer, director, and/or shareholder of Cajun Boiling Crab Co. *Id.* ¶ 4.

The Boiling Crab alleged that each of the Defendants purposefully directed intentional acts towards California residents by infringing The Boiling Crab's Marks, and otherwise purposefully availed themselves of the forum by conducting activities here. *Id.* ¶ 6. Indeed, Chenevert, who directed, controlled, and ratified the unlawful conduct of Cajun Boiling Crab Co. and Cajun Boiling Crab Inc., had actual and/or constructive knowledge of The Boiling Crab's presence in California. *Id.* ¶¶ 5, 6 & 27. The Boiling Crab's claims for trademark infringement and unfair competition under state and federal law also arise from the Defendants' forum-related activities and exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004); *O'Reilly v. Valley Entm't, Inc.*, No. C-09-03580-CW (DMR), 2011 WL 13258234, at *3 (Jan. 4, 2011), *R. & R. adopted*, 2011 WL 13260734 (N.D. Cal. Feb. 16, 2011) (discussing *Calder* effects test in context of default judgment). Taking the Complaint's well-pled allegations as true, this Court has subject matter and personal jurisdiction over Defendants.

**B.    The Boiling Crab Satisfied All Procedural Requirements for Obtaining a Default Judgment Against Defendants**

Before the Court may enter default judgment, the party seeking entry of default judgment must comply with procedural requirements set forth in Rule 55, as well as Local Rule 55-1. Namely, the party must set forth: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general

DAVIS WRIGHT TREMAINE LLP

guardian, committee, conservator or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. app. § 521 (transferred to 50 U.S.C. § 3931)) does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

On March 4, 2021, The Boiling Crab filed its Complaint and then served the Summons and Complaint on March 12 and 25, 2021 on Cajun Boiling Crab Co., Cajun Boiling Crab Inc., and Chenevert. *See* Dkt. Nos. 19, 21 & 23. Defendants failed to respond, failed to request an extension of time to respond, and have otherwise failed to appear in this action. *See* Declaration of Steven E. Klein ("Klein Decl.") ¶ 6. On April 23, the Clerk entered default judgment against Defendants based on these facts. *See id.* ¶ 7; Dkt. Nos. 27-29. To the best of Plaintiff's knowledge, information and belief, Defendants are not infants or incompetents, nor are Defendants military service members, or otherwise entitled to the exceptions found in the Servicemembers Civil Relief Act. Klein Decl. ¶ 8. Finally, service of notice is not required under Rule 55(b)(2) because none of the Defendants have appeared in this action.

**C.    The Boiling Crab Is Entitled to Default Judgment Against Defendants Under the *Eitel* Factors**

In the Ninth Circuit, a court's decision to grant default judgment is guided by the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. While the decision to grant default judgment is left to the sound discretion of the Court, "default judgments are more often granted than denied." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

1.    **First *Eitel* Factor:  The Boiling Crab Will Be Prejudiced Without Entry of Default Judgment**

Under the first *Eitel* factor, the Court considers the possibility of prejudice to the moving party.  *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted.") (internal quotations omitted).

The Boiling Crab will be prejudiced if a default judgment is not entered against Defendants.  The Boiling Crab properly served the Defendants with the Summons and Complaint.  *See* Dkt. Nos. 19, 21 & 23.  Defendants have made clear through their lack of response they do not intend to participate in this litigation.  Absent a default judgment, The Boiling Crab will not have its case heard on the merits.  Without a default judgment in this case, The Boiling Crab cannot remedy the harm Defendants caused and has no way to prevent Defendants from causing further damage to The Boiling Crab and its customers.  This factor weighs in favor of granting a default judgment.

2.    **Second and Third *Eitel* Factors: The Boiling Crab's Claims Are Meritorious and The Complaint Is Well-Pled**

The second and third *Eitel* factors "are often analyzed together." *Bd. of Trustees of Pac. Coast Roofers Pension Plan v. Fryer Roofing Co.*, No. 16-CV-02798-LHK, 2017 WL 6539868, at *4 (N.D. Cal. Dec. 21, 2017).  Using these factors, the Court must examine whether the plaintiff pleaded facts sufficient to establish and succeed upon the asserted claims.  *See PepsiCo*, 238 F. Supp. 2d at 1175; *Philip Morris USA*, 219 F.R.D. at 499.  The Boiling Crab's Complaint provide facts sufficient to satisfy the elements of each of the below causes of action, and therefore these *Eitel* factors support entry of default judgment against Defendants.

DAVIS WRIGHT TREMAINE LLP

8

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

(a)     **Infringement of Federally Registered Trademarks (15 U.S.C. § 1114(1))**

The Boiling Crab's first claim relief is for infringement of a federally registered trademark pursuant to 15 U.S.C. § 1114(1).  To establish trademark infringement, The Boiling Crab must "must show that: (1) it has a valid, protectable trademark, and (2) that [Defendants'] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *see* 15 U.S.C. § 1114(1).  The Boiling Crab's allegations establish that Defendants have violated The Boiling Crab's exclusive rights to use the Marks, and that Defendants' use of the mark is likely to cause confusion.

*First*, "federal registration of the mark is prima facie evidence that the registrant is the owner of the mark[,] . . . [which grants the] registrant . . . a presumption of ownership, dating to the filing date of the application for federal registration[.]" *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219, *as modified*, 97 F.3d 1460 (9th Cir. 1996).  Here, The Boiling Crab alleged it owns valid, registered marks.  *See* Compl. ¶ 18.  Indeed, The Boiling Crab's federal registration Nos. 3256219, 4174077, and 4491054 have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  *Id.* ¶ 19. Also, The Boiling Crab's federal registration No. 5374534 constitutes *prima facie* evidence that the mark is not only valid but that The Boiling Crab is entitled to exclusive use of the mark in commerce throughout the United States for restaurant services.  *Id.* ¶ 20.

*Second*, the Ninth Circuit employs an eight-factor test (the "*Sleekcraft*" factors) to assess the likelihood of confusion: (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; and (8) likelihood of expansion.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).  A court may examine all of some of the

*Sleekcraft* factors, depending on their relevance and importance. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).

Here, The Boiling Crab sufficiently alleged that Defendants offered for sale, and indeed continue to offer for sale, services and goods bearing the CAJUN BOILING CRAB marks, causing a strong likelihood of confusion in the marketplace. *See* Compl. ¶¶ 21-27, 32 & 43. Of great significance in this action, are the similarity of THE BOILING CRAB and CAJUN BOILING CRAB marks, the relatedness of the restaurant goods and services, and the similar marketing channels.

*Similarity of Marks*. Even a cursory glance at THE BOILING CRAB and CAJUN BOILING CRAB marks reveals how similar the marks are in sound and appearance. The Marks and the Infringing Marks both use the phrase, "BOILING CRAB." The CAJUN BOILING CRAB incorporates the term "CAJUN," but this does little to minimize the similarities between the Marks and the Infringing Marks. Indeed, in some respects it only magnifies the similarities, as THE BOILING CRAB's brand emphasizes its Louisiana-style seafood, distinctly known for its Cajun seasoning and spices. Additionally, the Marks and the Infringing Marks are displayed with the same colors—a combination of red and black—and The Boiling Crab and Defendants feature their respective marks with red crabs. For example, The Boiling Crab's federal registration No. 5374534 includes a red crab, displayed in black and white or red and black, as illustrated below.



Defendants also display the CAJUN BOILING CRAB marks with red a crab, as illustrated below.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP



Moreover, Defendants' use of the Infringing Marks for branding purposes blatantly mimic The Boiling Crab's use of its marks.  By way of example, Defendants frequently display the Infringing Marks on signage, menus, advertising, and social media with the same promotional phrase—EAT WITH YOUR HANDS and #EATWITHYOURHANDS—used by The Boiling Crab over the years.  *See, e.g.*, Compl. ¶¶ 24-25 & Exs. G-H.  Given the clear similarity between the Marks and the Infringing Marks, the consumer will very likely confuse the Cajun Boiling Crab Restaurants with The Boiling Crab Restaurants.

*Relatedness of Goods and Services.*  Defendants have used, and continue to use, the Infringing Mark in connection with related goods and services.  Like The Boiling Crab, Defendants use CAJUN BOILING CRAB in connection with the sale and advertising of its restaurant services, namely Louisiana-style seafood restaurants.  Not only do The Boiling Crab and Defendants use their respective marks with seafood restaurants, but each of them offers Louisiana-style cuisine with same seafood-by-the-pound dining concept.  Because the goods and services are nearly identical, a prospective consumer seeking to try The Boiling Crab's widely acclaimed Louisiana-style seafood is very likely to mistake Cajun Boiling Crab Restaurants with The Boiling Crab Restaurants.

*Marketing Channels.* Such likelihood of confusion is further magnified by Defendants' use of the same marketing channels, including use of deceptively similar menus, website, and social media pages.  Like The Boiling Crab, Defendants have created CAJUN BOILING CRAB pages on social media

NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

platforms, like Twitter, Facebook, and Instagram. Compl. ¶¶ 24-25. Given Defendants' use of red, black, and white colors, the pages mimic the look-and-feel of The Boiling Crab's menus, website, and social media pages. Indeed, as previously noted, Defendants have blatantly copied The Boiling Crab's promotional slogan EAT WITH YOUR HANDS in order to confuse consumers into associating its knock-off restaurants with The Boiling Crab Restaurants. *Id.* ¶ 25.

*Defendants' Intent*. It has long been recognized that where an infringer adopts a designation with the intent of deriving benefit from the reputation of the plaintiff's trademark, an inference that the marks are confusingly similar can be drawn. *See United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828 MWF-MAA, 2020 WL 4369778, at *12 (C.D. Cal. July 7, 2020). An inference of confusion is also appropriate where a mark is adopted with the intent to deceive the public. *Id.* Indeed, when an alleged infringer knowingly adopts a mark similar to another's, courts will generally presume an intent to deceive the public. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *see also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1962) (explaining that defendant's adoption of the "Black & White" mark used by a well-known whiskey company indicates that the brewing company expected confusion and resulting profit). Here, by failing to appear, the Defendants have admitted that they adopted the Infringing Marks "[i]n an effort to confuse consumers into thinking that Defendants' restaurants were somehow associated with The Boiling Crab's THE BOILING CRAB nationwide chain of restaurants," with both actual and constructive knowledge of The Boiling Crab and its Marks, and with the intent to deceive and confuse the public. Compl. ¶¶ 21, 27, 34 & 36.

The Boiling Crab has alleged sufficient facts to show Defendants have violated its exclusive rights to use the Marks for their restaurants, and that there is a likelihood of confusion between its Marks and the Defendants' Infringing

DAVIS WRIGHT TREMAINE LLP

Marks.[2]

### (b)  Federal Unfair Competition (15 U.S.C. § 1125(a)) and State Unfair Competition (Cal. Bus. & Prof. Code § 17200)

The Boiling Crab's second and third claims are for violations of federal unfair competition law under the Lanham Act, 15 U.S.C. § 1125(a), and state unfair competition law under California Business & Professions Code § 17200, respectively.  The Lanham Act prohibits, *inter alia*, the use in connection with any goods or services of any word, term or name that misrepresents the nature, characteristics or qualities of the person's, or anyone else's goods and services. 15 U.S.C. § 1125(a)(1)(B).  Relatedly, a violation of California Business & Professions Code section 17200 *et seq.*, prohibits unlawful, unfair or fraudulent business acts or practices.

The Ninth Circuit finds that "federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent."  *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980); *see Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (Courts in the Ninth Circuit "consistently h[o]ld that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act.").

---

[2] Finding both Chenevert and the corporate defendants liable is appropriate here. The Lanham Act contemplates that natural persons, as well as corporations, can be liable for trademark infringement because "if there was an infringement by the corporation, this infringement was caused by some one or more persons either officers or employees of the corporation who caused the acts to be done." *Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968); 15 U.S.C. §§ 1114, 1127; *see also Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 990 (9th Cir. 1981) (applying rule in patent infringement context).  Moreover, a corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985).

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

1   The Boiling Crab alleges that Defendants' actions, including those discussed

2   in the preceding section, are likely to cause confusion or deceive consumers about

3   the affiliation, connection or association of Defendants with The Boiling Crab as to

4   the origin, sponsorship or approval of Defendants' products and services by The

5   Boiling Crab.  Such conduct constitutes unlawful, unfair or fraudulent business

6   acts or practices in violation of the Lanham Act and Section 17200.  *See, e.g.*,

7   *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d

8   1446, 1457 (9th Cir. 1991) (likelihood of confusion is test under both the Lanham

9   Act and Section 17200).  The Boiling Crab has also sufficiently alleged it has

10   suffered injury in fact as a result of Defendants' actions.  Compl. ¶¶ 26, 35-37.

11   Moreover, Defendants' default constitutes admission of the facts alleged in the

12   Complaint, and these admitted facts state a claim for violations of the Lanham Act

13   and the California Business & Professions Code.

### 3.  Fourth *Eitel* Factor:  Damages Are Appropriate Given the Seriousness and Scope of Defendants' Conduct

16   Under the fourth *Eitel* factor, "the court must consider the amount of money

17   at stake in relation to the seriousness of [d]efendant's conduct."  *PepsiCo*, 238 F.

18   Supp. 2d at 1176.  The Boiling Crab seeks $291,650.00 in damages.  This sum

19   reflects the gravity of Defendants' conduct, which constitutes massive and flagrant

20   infringement of The Boiling Crab's Marks for the past year.  Defendants have

21   exacerbated their wrongful conduct by ignoring this litigation seeking to halt

22   Defendants' flagrant infringement, all the while continuing to infringe The Boiling

23   Crab's Marks.  This factor weighs in favor of granting default judgment.

### 4.  Fifth *Eitel* Factor:  There Is No Possibility of Disputed Material Facts

26   The fifth *Eitel* factor requires the Court to consider the possibility of a

27   dispute as to a material fact.  *Eitel*, 782 F.2d at 1471-72.  A defendant's failure to

28   respond to a complaint indicates that "the likelihood that any genuine issue may

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

exist is, at best, remote." *Philip Morris*, 219 F.R.D. at 500. Well-pled allegations in the complaint regarding liability are deemed true upon entry of default. *Fair Hous.*, 285 F.3d at 906.

The Boiling Crab's Complaint is well-pled and has established the necessary facts for each cause of action. On April 23, 2021, the Clerk entered a default against Defendants. *See* Dkt. Nos. 27-29. Thus, there is no dispute concerning material facts. This factor weighs in favor of granting default judgment.

### 5. Sixth *Eitel* Factor: There Is No Possibility of Excusable Neglect

Under the sixth *Eitel* factor, the Court considers whether Defendants' default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. No facts suggest that Defendants' failure to respond in this action is a result of excusable neglect. *See Shanghai Automation Instrument Co v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect). Defendants' conduct is not excusable because each of the Defendants was served with process but none filed a responsive pleading, asked for an extension, or otherwise made an appearance in this action. *See also Meadows v. Dom. Rep.*, 817 F.2d 517, 521 (9th Cir. 1987) ("A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer."). Accordingly, this factor also weighs in favor of entering a default judgment against Defendants.

### 6. Seventh *Eitel* Factor: The Policy Favoring Decisions on the Merits is Not Dispositive Where Defendants Knowingly Abandoned Their Defense

The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1471-72. This Court has explained "[w]hile the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

dispositive, especially where a defendant fails to appear or defend itself in an action."  *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citing *Naturemarket, Inc.*, 694 F. Supp. 2d at 1061).  Defendants knowingly abandoned *any* defense of this action.  Thus, Defendants' own actions forestalled a decision on the merits.  Therefore, this factor is outweighed by all of the other factors, all of which favor default judgment.

**D.     The Boiling Crab Is Entitled to Relief**

**1.     Permanent Injunction**

Under the Lanham Act and California law, injunctive relief is available to prevent future trademark infringement.  15 U.S.C. § 1116(a); Cal. Bus. & Prof. Code §§ 14330, 14340, 17200 *et seq.*; *see Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases.").  To justify injunctive relief, a plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) the equities tip in the plaintiff's favor; and (4) the injunction serves the public interest.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Generally, "a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

As part of the Trademark Modernization Act of 2020, Congress amended the text of 15 U.S.C. Section 1116(a) regarding injunctive relief in trademark infringement actions.[3]  Namely, a plaintiff seeking injunctive relief "shall be entitled to a rebuttable presumption of irreparable harm upon a finding of . . .  a likelihood of success on the merits." 15 U.S.C. § 1116(a); *see, e.g.*, *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-CV-04310-ODW (KSx), 2021 WL

---

[3] The Trademark Modernization Act of 2020, Pub. L. No. 116-260 (codified as part of the Consolidated Appropriations Act, 2021), became effective on December 27, 2020.

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

2227394, at *4 (C.D. Cal. May 3, 2021) (applying presumption of irreparable harm in light of plaintiff's showing of a likelihood of success on the merits); *see also Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc.*, No. 4:19-CV-01424-YGR, 2021 WL 254448, at *14 n.16 (N.D. Cal. Jan. 26, 2021) (noting how recent Lanham Act amendment "only reinforces the appropriateness of a permanent injunction[.]")

*First*, Defendants' default acts as an admission of the factual allegations regarding liability.  Moreover, in light of recent changes to the text of 15 U.S.C. Section 1116(a), there is a presumption of irreparable harm to Plaintiffs, as there is a likelihood of success on the merits.  And there is near certainty that without a permanent injunction, Defendants will continue to infringe The Boiling Crab's Marks, causing continued irreparable injury to Plaintiff.  *See IO Grp., Inc. v. Antelope Media, LLC*, No. C-08-4050 MMC, 2010 WL 2198707, at *2 (N.D. Cal. May 28, 2010).

*Second*, an award of monetary damages alone is unlikely to prevent or deter Defendants' conduct because it may prove challenging—if not impossible—to collect a damage award from Defendants.  Defendants have completely disregarded this action and this Court.  It is highly unlikely that Defendants will voluntarily satisfy any damages award.

*Finally*, the public interest will be served by granting an injunction to uphold Plaintiffs' rights.  *See MAI Sys.*, 991 F.2d at 520.  Particularly given that Defendants have falsely advertised and marketed their restaurants, a permanent injunction is necessary to ensure that consumers seeking The Boiling Crab Restaurants do not mistakenly dine at the Cajun Boiling Crab Restaurants.

### 2.    Damages and Disgorgement of Profits

The Lanham Act provides that when a plaintiff establishes infringement of a registered mark, the plaintiff may seek recovery of: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C.

DAVIS WRIGHT TREMAINE LLP

17

DAVIS WRIGHT TREMAINE LLP

§ 1117(a).  In trademark disputes, "sales are equivalent to profits absent evidence from the defendant as to costs or other deductions from said profits."  *Craigslist, Inc. v. Kerbel*, No. C-11-3309 EMC, 2012 WL 3166798, at *18 (N.D. Cal. Aug. 2, 2012).  The Lanham Act also allows for disgorgement of profits for unfair competition.  15 U.S.C. §1125(a); *see, e.g.*, *Adultcon Inc. v. Sol Entm't Inc.*, No. SACV 14-0291 AG (JPRx), 2014 WL 12622419, at *2 (C.D. Cal. Dec. 22, 2014) (awarding disgorgement of profits based on estimated gross revenue for similar night clubs).

While "'[i]t is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation,' . . .  a 'hearing' under this rule need not include live testimony, but may instead rely on declarations submitted by the parties."  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) (citing *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir.1981) and C.D. Cal. R. 55-2).

The Boiling Crab seeks actual damages calculated on the basis of a reasonable royalty.  *See Active Sports Lifestyle USA LLC v. Old Navy, LLC*, No. SACV 12-00572 JVS, 2013 WL 11239385, at *17 (C.D. Cal. Nov. 21, 2013) (Noting the "well-established principle that a reasonable royalty is a permissible measure of damages in a trademark case"); *see also Taco Cabana Int'l, Inc. v. Two Pesos, Inc*., 932 F.2d 1113, 1126 (5th Cir. 1991) (plaintiff's recoverable damages for trademark infringement and unfair competition include "the economic benefits they normally would have received by licensing.").

Reasonable royalties are a calculation of the hypothetical license which would have been paid but for the conduct giving rise to the claim.  *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).  Importantly, a prior or anticipated licensing agreement

between the parties is not a prerequisite for recovery of reasonable royalty damages. *See Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253-54 (S.D.N.Y. 2012) ("Even in cases without [a prior licensing agreement between the parties] . . . courts have awarded or approved of 'reasonable royalty' damages if the evidence provides a sufficiently reliable basis from which to calculate them."). It is sufficient if plaintiff can show reasonable royalties between a plaintiff and third parties. *See QS Wholesale Inc. v. World Mktg., Inc.*, No. SA 12-CV-0451, 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013); *see also Adidas Am., Inc. v. Skechers USA, Inc*., No. 3:15-cv-01741-HZ, 2017 WL 3319190, at *29 (D. Or. Aug. 3, 2017) ("Courts in this circuit have permitted royalty rate damages in the absence of prior licensing agreements between the parties where evidence provided a sufficiently reliable basis from which the courts could calculate such damages.").

Since its formation, Plaintiff has continuously licensed its THE BOILING CRAB marks to authorized franchisees for use in connection with genuine THE BOILING CRAB restaurants. Declaration of Dada Ngo ("Ngo Decl.") ¶ 2. Currently, there are 15 franchised locations of THE BOILING CRAB restaurant in the United States. *Id.* ¶ 3. Several are in the greater Los Angeles region—within 5 to 20 miles of Defendants' Los Angeles location—including the Koreatown, Alhambra, and Rosemead franchised THE BOILING CRAB locations.[4] *Id.* ¶ 4.

As detailed in Plaintiff's annual Franchise Disclosure Document filed with the California Secretary of State, Plaintiff's current fees and royalties for franchised locations that are licensed to use Plaintiff's THE BOILING CRAB Marks include an initial franchise fee of $39,500 for the first location and $31,500 for each subsequent location, as well as a royalty fee of 5% of gross sales of each

---

[4] In addition to the right to use the Marks, the license from Plaintiff to its franchisees includes the right to use Plaintiff's unregistered common law marks. Ngo ¶ 2 & Ex. A

19

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

DAVIS WRIGHT TREMAINE LLP

location.[5]  Ngo Decl. ¶ 5 & Ex. A.  This standard fee structure is also a term of the written franchise agreements by which Plaintiff licenses use of its Marks to each of its franchisees.[6]  *Id.*

Based on Defendants' opening two locations under the Infringing Marks, an initial franchise fee in the total amount of $71,000 ($39,500 for the first location and $31,500 for the second) is appropriate.  *Id.* ¶ 8.

Given Defendants' failure to make an appearance in this action, The Boiling Crab does not have the benefit of any discovery regarding Defendants' gross sales for purposes of calculating the royalty on revenues.  Nonetheless, The Boiling Crab has estimated Cajun Boiling Crab's gross sales based on the actual average monthly sales generated during the same time periods by its franchised locations in the Koreatown section of Los Angeles and Honolulu, Hawaii.  *See id.* ¶¶ 9-11.

To estimate gross sales for Defendants' Los Angeles restaurant, The Boiling Crab looked to the franchised THE BOILING CRAB locations in the Los Angeles area that had the smallest footprints, Koreatown and Alhambra.  While Koreatown is sited closer to Defendants' restaurant, its monthly revenues during the relevant period were significantly higher than Alhambra's.  *Id.* ¶ 10.  Thus, to be conservative, The Boiling Crab based its estimate on Alhambra's gross sales, for

---

[5] "Gross sales" are measured by the aggregate of all revenue and income from operating the location, including the actual proceeds received from all sales of food, beverages or other goods, merchandise or services, whether payment is in cash, by credit card, gift cards, or other generally accepted form of payment. Gross sales also include all proceeds from any business interruption insurance, revenue from the sale of menu items to employees, and the value of products and services bought by customers by redeeming authorized gift cards should we introduce a gift card program in the future. Ngo Decl. ¶ 6 & Ex. A.

[6] Calculating a reasonable royalty based on the standard rates The Boiling Crab employs with its authorized franchisees is not inconsistent with the fact that, other than use of the Infringing Marks, Defendants did not obtain any of the other benefits enjoyed by an authorized franchisee.  *See Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1520 (11th Cir. 1990).  Among other things, by deliberately seeking to imitate The Boiling Crab's Marks for purposes of consumer confusion, Defendants took advantage of perhaps the most significant franchise benefit:  the general reputation and goodwill represented by the Marks.  *Id.*; *see also ADT v. Alarm Prot. LLC*, No. 9:15-CV-80073, 2017 WL 2212541, at *5 (S.D. Fla. 2017).

20

DAVIS WRIGHT TREMAINE LLP

the seven month period from November 2020, when Defendants' Los Angeles restaurant opened, to the present, which averaged approximately $368,000 a month. Based on this figure, The Boiling Crab estimates that the total gross sales for Defendants' Los Angeles location during the six full months it has been in operation (December 2020 through May 2021) total a least $2,208,000. *Id.*

To estimate gross sales for Defendants' Detroit location, The Boiling Crab looked to the franchised locations outside the Los Angeles area that are in urban, rather than suburban locations. *Id.* ¶ 11. From that group, The Boiling Crab then determined which location had the lowest gross sales during the relevant period, to be conservative. For the ten month period from August 2020, when Defendants' Detroit restaurant opened to the present, the Honolulu location's average monthly gross sales of $245,000 were the lowest of all urban franchise locations outside of Los Angeles. *Id.* Based on this figure, The Boiling Crab estimates that the total gross sales for Defendants' Detroit location during its nine full months of operation (September 2020 through May 2021) total a least $2,205,000. *Id.*

Applying The Boiling Crab's standard 5% royalty rate to Defendants' total estimated gross sales of $4,413,000 for Defendants' two locations, the royalty fees for sales generated by Defendants' use of the Infringing Marks is $220,650. *Id.* ¶ 12.

In light of these estimates, $291,650 ($71,000 in initial franchise fees plus $220,650 in royalty fees) is appropriately entered as reasonable royalty damages for the Defendants' trademark infringement in this action.

### 3.    Attorneys' Fees

Attorneys' fees and costs are recoverable on The Boiling Crab's trademark claims under 15 U.S.C. § 1117(a) due to the "exceptional circumstances" surrounding Defendants' willful violation of 15 U.S.C. § 1125(a)(1)(b). *See Mantra Band, LLC v. Ozpar Pty Ltd*, No. SACV 19-00197JVS (ADSx), 2020 WL 5163567, at *4 (C.D. Cal. June 4, 2020) (Under the Lanham Act, "[t]he court may

award reasonable attorney fees in exceptional cases.").  In determining whether a case is exceptional, court examine the "totality of the circumstances," including such factors as "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence."  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180-81 (9th Cir. 2016) (en banc; per curiam) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 n.6, 555 (2014)).

As detailed above, Defendants' trademark infringement is deliberate and willful, and thus attorney fees are warranted.  The Boiling Crab requests attorneys' fees associated with its pre-filing investigation of Defendants, fees associated with filing and serving the complaint, and fees associated with seeking Defendants' default and default judgment.  The Boiling Crab seeks attorneys' fees calculated according to the fee schedule set forth in Local Rule 55-3, which provides that fees shall be calculated as $5,600, plus $3,833 (2% of the amount of the Judgment over $100,000) for a total of $9,433.  Pursuant to Local Rule 54, The Boiling Crab will submit an Application to Tax Costs following entry of judgment.

### 4.    Post-Judgment Interest

Plaintiffs respectfully request post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).

DAVIS WRIGHT TREMAINE LLP

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM

1

## IV.    CONCLUSION

2    For the foregoing reasons, The Boiling Crab respectfully requests that the

3  Court grant a default judgment, including an award of damages, attorneys' fees,

4  and post-judgment interest, and also issue a permanent injunction restraining Cajun

5  Boiling Crab's continued infringement of The Boiling Crab's trademarks.

6

7  DATED: June 24, 2021                    Respectfully submitted,

8

                                         By: */s/ John D. Freed*
9                                              John D. Freed

10

11                                       DAVIS WRIGHT TREMAINE LLP
                                         505 Montgomery Street, Suite 800
12                                       San Francisco, California  94111
                                         Telephone:    (415) 276-6500
13                                       Facsimile:    (415) 276-6599
                                         Email:        jakefreed@dwt.com
14

15                                       Steven E. Klein (*Pro hac vice*)
                                         Email: stevenklein@dwt.com
16                                       DAVIS WRIGHT TREMAINE LLP
                                         1300 S.W. Fifth Avenue, Suite 2400
17                                       Portland, Oregon  97201-5610
                                         Telephone:    (503) 241-2300
18                                       Facsimile:    (503) 778-5299
19

20                                       Attorneys for Plaintiff

21

22

23

24

25

26

27

28

*DAVIS WRIGHT TREMAINE LLP*

**NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**
Case No. 8:21-cv-00402-JVS-DFM